**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| INVICTUS AEROSPACE GROUP<br>850 Ben Graves Drive, NW<br>Huntsville, Alabama 35801 | * <br> * | |
| Plaintiff | * | **CIVIL ACTION NO.** |
| v. | * | |
| POINT BLANK ENTERPRISES, INC.<br>2102 SW 2nd Street<br>Pompano Beach, FL 33069 | * <br> * | |
| Defendants | * | |
| SERVE ON:<br>The Corporation Trust, Incorporated<br>2405 York Road<br>Suite 201<br>Lutherville, MD 21093-2264 | * <br> * <br> * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT**

Plaintiff Invictus Aerospace Group, LLC, by and through its attorneys, Brandy A. Peeples and Brandy A. Peeples, P.C. t/a Peeples Law, file suit against Defendant Point Blank Enterprises and states the following in support thereof:

THE PARTIES

1. Plaintiff Invictus Aerospace Group is an Limited Liability Company duly formed within the State of Arizona with its principal office located at 430 South Rock Cress Lane, Show Low, Arizona 85901 and it maintains a business at 850 Ben Graves Drive, NW, Huntsville, 35899.

2. Defendant Point Blank Enterprises is a Florida Corporation witht its principal place of business located at 2101 SW 2nd Street, Pompano Beach, Florida 33069. Point Blank Enterprises is also registered to do business in the State of Maryland, with its resident agent being The Corporation Trust, Incorporated, 2405 York Road, Suite 201, Lutherville, Maryland 21093.

## JURISDICTION & VENUE

3. Plaintiff's claims arise from and/or relate to a contract between the Plaintiff and the Defendant dated December 21, 2016 and executed by the Defendant on January 1, 2017. Pursuant to Paragraph 9 of the Contract, a copy of which is attached hereto and made a part hereof as **Exhibit A**, the parties agreed that "any dispute between the parties shall be resolved in the courts of Maryland, and each party consents to the exercise of personal jurisdiction by the courts of Maryland and expressly waives any argument of forum nonconveniens." *See* **Exh. A** at ¶9.

4. Alternatively, the Plaintiff brings its complaint under federal diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount of Plaintiff's claim exceeds Seventy-Five Thousand Dollars ($75,000.00).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since the contract requires disputes to be brought in the courts of Maryland and since Defendant is registered to conduct business in the State of Maryland.

### *Facts*

6. This case arises from a contract into which the Plaintiff, Invictus Aerospsace Group, LLC ("Invictus") entered into a contract with the Defendant, Point Blank Enterprises ("PBE") to perform certain sales development tasks on behalf of PBE, for a monthly retainer plus commissions.

7. PBE is a Florida Corporation engaged in the production of soft body armor and related protective solutions.

8. In 2015, PBE acquired certain assets of The Protective Group, Inc. ("TPG"), a ballistic armor manufacturer and systems integrator based in Miami Lakes, FL.

9. Nathaniel J. Hoffman ("Nate Hoffman"), Vice President for Plaintiff Invictus, previously worked for TPG, and he possesses extensive expertise in ballistic armor sales in the Middle East, Africa, Asia, South America, and Europe.

10. Beginning in September, 2016, PBE through its agent Jack Greenberg, solicited Nate Hoffman, on behalf of Invictus, to manage business development on behalf of PBE in Huntsville, Alabama.

11. Thereafter, Plainttiff and Defendant PBE, through its agents Mark Edwards, Scottt McMichael and Jack Greenberg, began negotiating a contract, which included discussions relating to Plaintiff's territory, the scope of Invictus' business development duties, and compensation.

12. As part of the contract negotiations, Defendant PBE offered Invictus a Four Thousand Dollar ($4,000.00) monthly retainer, which Defendant PBE, through its agent Scott McMichael, acknowledged was low and below industry standards but was also a number to be reconciled through the commission structure.

13. In exchange for the low monthly retainer, Defendant PBE through its agent Scott McMichael, promised Invictus that it would establish a commission schedule for Invictus, and that said commission schedule would be commensurate with the commission schedules received by comparable consulting firms.

14. As a result of Defendant PBE's solicitations and promises, the parties eventually agreed to terms, and by contract dated December 21, 2016 and executed on January 2, 2017 by

PBE (the "Contract"), Invictus was appointed to perform Huntsville sales development as an authorized representative of Defendant PBE to to assist PBE in obtaining contracts for PBE products and services.  See **Exh. A.**

15. Pursuant to the Contract, Invictus was to focus its sales and marketing efforts on the U.S. federal government market, U.S. federal government prime contractors, and selected subcontractors and commercial companies as mutually agreed by the PBE and Invictus.  Moreover, Nate Hoffman was specifically instructed to focus his sale effort on US Army Aviation aircraft.

16.  The term of the Contract was for a period of thirty-six (36) months.  See **Exh. A.**

16. Paragraph 3 of the Contract related to Invictus' compensation and provided as follows:

*3.     Retainer Fee and Commission.*

*3.1    Retainer Fee. PBE agrees to pay CONTRACTOR a monthly retainer fee of Four Thousand Dollars ($4000.00) due and payable in advance on the 1st day of each month during the term of this Agreement (the "Retainer Fee").*

*3.2    Commission. In addition to the Retainer Fee, PBE shall pay CONTRACTOR commission on sales secured by CONTRACTOR and awarded to PBE (the "Commission"), as follows:*

*PBE Sales*
*Up to $10.0 million*
*$10.0 million and up*

*Commission payable to CONTRACTOR 1.0%*
*2.0%*

*Contractor's commission rate is based on cumulative sales during the term of this agreement. When the total amount of PBE sales secured by CONTRACTOR equals or exceeds $10 million annually, Contractor's commission on such incremental sales will be paid at the 2% rate.*

*Example: If CONTRACTOR secures two contracts for PBE totaling $9,700,000, commission due to CONTRACTOR is 1% of $9,700,000 or $97,000. If CONTRACTOR later secures an additional $1 million contract for PBE,*

> *commission due to CONTRACTOR on the new contract would be calculated as 1% on $300,000 plus 2% on $700,000, or $17,000 ($3,000+$14,000).*
>
> *3.2.1   PBE shall pay all commissions to CONTRACTOR within thirty (30)days after PBE receives payment from its customer.*
>
> *3.2.2   Upon mutual agreement of the Parties, CONTRACTOR's commission rate may be revised during negotiations with a specific customer, allowing for flexibility in negotiating final pricing.*
>
> *3.2.3   So long as a PBE sale or sale from a contract arises from the work of CONTRACTOR under this Agreement up to twelve (12) months after termination, PBE will be obligated to pay CONTRACTOR the Commission set forth herein, even if this Agreement is terminated prior to the consummation of such sale or contract or payment by PBE's customer.*
>
> *3.3   Any and all Retainer Fees and Commission payments made by PBE to CONTRACTOR pursuant to this Agreement shall be made by wire transfer pursuant to instructions provided by CONTRACTOR.*
>
> *3.4   The Parties may mutually agree to modify and/or expand the Scope of Work, and in such event, the Parties will also negotiate appropriate modifications to CONTRACTOR's Retainer Fee and Commission.*

17.   Although the Contract also allowed the parties to negotiate modifications to the retainer fee and commissions, Paragraph 11 of the Contract required all modifications to the Contract to be in writing.  *See* **Exh. A**.

18.   In reliance on the representations and promises made by Defendant PBE, and in reliance on the executed Contract, on January 2, 2017, Nate Hoffman on behalf of Invictus relocated his home from Denver, Colorado to Huntsville, Alabama to establish Invictus' Hunstville location.

19.   Following execution of the contract, Nate Hoffman attended a meeting with PBE agents Scott McMichael and Jack Greenberg, where Invictus was instructed to manage its Huntsville programs regarding the following: UH-60 Blackhawk Helicopter, the CH-47 Chinook Helicopter, and Non-Standard Rotary Wing Helicopters.

20. In March, 2017, Plaintiff Invictus was instructed by Defendant PBE to begin international sales on behalf of Defendant PBE.

21. In March, 2017, Defendant PBE agents Mark Edwards and Jack Greenberg requested that Plaintiff Invictus execute a representation agreement between Plaintiff Invictus and COL (Ret.) Al Rumphrey (Al) a consultant, whereby Plaintiff Invictus would pay Al the sum of One Thousand Five Hundred Dollars ($1,500.00) per month, and Defendant PBE would reimburse Plaintiff Invictus Two Thousand Dollars ($2,000.00). A copy of the aforesaid addendum is attached hereto and made a part hereof as **Exhibit B**.

21. During 2017, the scope of Invictus' work on behalf of Defendant PBE increased dramatically, with such scope expanding to Defendant PBE's international sales of all of its product lines, attending conference(s), research and development, and proposal development and management. Indeed, Invictus began to submit proposals on behalf of Defendant PBE to several entities including the Department of Homeland Security.

22. Notwithstanding the fact that Defendant PBE increased Plaintiff's scope of work, beginning in June, 2017, Defendant PBE failed to pay Plaintiff Invictus' June, 2017 in accordance with the terms of the Contract.

23. On June 29, 2017, and nearly one (1) month past its contractual due date, Defendant PBE, in contravention of the Contract, issued a paper check to Plaintiff Invictus for June services.

24. In August, 2017, Plaintiff Invictus was advised by Defendant PBE that it unilaterally had changed payment of Invictus' retainer from the first day of every month to net-15 payment terms.

25. Thereafter, Defendant PBE demanded a larger scope of work from Invictus, and for the remaining months of 2017 and in 2018, Invictus was instructed to, *inter alia*, pursue

international body armor sales for Pakistan, Japan, Jordan, Chile, Nigeria, etc. and travel to various destinations including Japan, Las Vegas, NV, and Miami, FL, organize and host a social event after a U.S. Army Conference in Huntsville, AL, coordinate, organize and attend embassy visits in Washington, D.C., staff positions within Defendant PBE.

26. Additionally, Defendant PBE instructed Plaintiff Invictus to train Defendant PBE's own employees on international sales practices, procedures and policies.

27. In October, 2017, Plaintiff secured sales contracts on the CH-47 UAE in the amount of $6,885,617.26, and Invictus was to be paid in accordance with the terms of the Contract.

28. However, in December, 2017, and with respect to the CH-47 UAE sales, Defendant PBE unilaterally made the determination that Invictus was to receive a commission of one-half (1/2) percent instead of the full one (1) percent as mandated by the Contract.

29. No commissions were paid to Plaintiff Invictus in 2017.

30. In January, 2018, Plaintiff Invictus received one-half (1/2) percent of commissions on the CH-47 UAE sales, with Defendant PBE promise that the remaining one-half percent (1/2) would be paid in 2018.

31. On January 1, 2018, the parties modified their original Contract to increase the monthly retainer payable to Invictus from Four Thousand Dollars per month ($4,000.00) to Six Thousand Dollars ($6,000.00) per month (the "January 2018 Modification").  A copy of the January 2018 Modification is attached hereto and made a part hereof as **Exhibit B**.

32. Notably, the January 2018 Modification did not alter the commission rates payable to Plaintiff Invictus, and thus, Plaintiff Invictus was to continue to receive commissions at the rate of one percent (1%) on sales up to Ten Million Dollars ($10,000,000.00) and two percent (2%) commissions once sales exceeded ($10,000,000.00) annually.

33. Thereafter, Defendant PBE continued its pattern of late payments to Plaintiff Invictus, all while continuing to promise to pay Plaintiff Invictus in accordance with the terms of the Contract and the January 2018 Modification.

34. In May, 2018, Defendant PBE requested that Plaintiff Invictus execute a representation agreement between Defendant PBE and Anwar Zureikat ("Anwar"), a consultant, whereby Plaintiff Invictus would put in place a contract with Anwar promising to pay Anwar the sum of Two Thousand Dollars ($2,000.00) per month, and Defendant PBE would reimburse Plaintiff Invictus said Two Thousand Dollars ($2,000.00). Consistent with that agreement, in May, 2018, Plaintiff Invictus sent Defendant PBE an addendum to the Contract (and the January 2018 Modification) to account for the monthly $2000 retainer to be paid to Anwar ("Anwar Addendum"). A copy of the aforesaid addendum is attached hereto and made a part hereof as **Exhibit C**.

35. The Anwar Addendum was never signed by Defendant PBE despite Defendant PBE agreeing to same.

36. In reliance on Defendant PBE's promises to reimburse Plaintiff Invictus an additional Two Thousand Dollars to be paid to Anwar, from July, 2018 through December, 2018, Plaintiff Invictus paid Anwar the Two Thousand Dollar ($2,000.00) monthly retainer as requested by Defendant PBE; however, to date, Defendant PBE never has reimbursed Plaintiff Invictus for same.

37. During 2018, Defendant PBE instructed Plaintiff Invictus in how to present its invoices by instructing Plaintiff Invictus to reduce its commissions, all the while promising Plaintiff Invictus that eventually the total amount of commissions due and owing under the Contract and the January 2018 Modification (collectively the "Contract Documents") would be

paid. Indeed, on one occasion, Defendant PBE requested that the Plaintiff Invictus reduce its commissions so that its agent Jack Greenberg could reach his sales goal to receive his bonus more quickly.

38.     Moreover, during 2018, Defendant PBE continued to expand Plaintiff Invictus' scope of work, all while at the same time continuing to promise the Plaintiff that it eventually would be paid the full amounts due and owing to Plaintiff Invictus in accordance with the terms of the Contract Documents.

38.     In October, 2018, Defendant PBE requested that Plaintiff Invictus execute a business development plan for US Army aviation Research & Development (R&D) program(s) (i.e. Future Attack Reconnaissance Aircraft and Future Long Range Assault Aircraft) and Defendant PBE would reimburse Plaintiff Invictus Two Thousand Dollars ($2,000.00) monthly for the increase in scope. Consistent with that agreement, in October, 2018, Plaintiff Invictus flew two members to Miami Lakes, FL to discuss the program in detail with PBE program management and their subcontractors. Invictus flew one member from Florida to a conference in Norfolk, VA to immediately begin involvement in the program. Invictus leveraged their expertise and contacts to begin a business development roadmap for the program(s). PBE hired a consultant in March, 2019 responsible for the program that Invictus began to develop.

39.      At all times relevant herein, Plaintiff Invictus performed its duties in accordance with the Contract Documents and the Al, Anwar and US Army aviation R&D Addendum.

40.     At all times relevant herein, Plaintiff Invictus continued to accede to the request of Defendant PBE in expanding its scope of work because Defendant PBE promised the Plaintiff Invictus that it would be paid in accordance with the Contract Documents and the Anwar Addendum.

41. In October, 2018, Defendant PBE, through its agent Mark Edwards, promised Plaintiff Invictus that a new professional services agreement, which included a higher retainer, was forthcoming. Yet, the updated agreement submitted to PBE agent Mark Edwards was never signed.

42. Through February, 2019, Plaintiff Invictus continued to work at the behest of Defendant PBE, including traveling to Jordan, because Defendant PBE kept assuring Plaintiff Invictus that it would get paid pursuant to the Contract Documents and the Anwar Addendum.

43. In March, 2019, with respect to sales relating to a contract with the Netherlands, Defendant PBE again instructed Plaintiff Invicttus to invoice Defendant for only one-half percent (1/2%) of its commissions due and owing under the Contract Documents.

44. Instead, in accordance with the terms of the Contract Documents, Plaintiff Invictus became frustrated with the continued and false promises made by Defendant PBE. Consequently, in March, 2019 the Plaintiff Invictus invoiced Defendant PBE for all outstanding unpaid and delinquent commissions that Defendant PBE owed Plaintiff Invictus in accordance with the Contract Documents and in accorandance with Defendant PBE's multiple promises to pay as agreed.

45. Five days later, after receiving Plaintiff Invictus' invoices, Defendant PBE terminated the parties' Contracts.

46. Paragraph 3.2.3 of the Contract and the January 2018 Modification provide:

*3.2.3   So long as a PBE sale or sale from a contract arises from the work of CONTRACTOR under this Agreement up to twelve (12) months after termination, PBE will be obligated to pay CONTRACTOR the Commission set forth herein, even if this Agreement is terminated prior to the consummation of such sale or contract or payment by PBE's customer*

47. Plaintiff Invictus generated substantial sales for Defendant PBE through and including Defendant PBE's termination of the Plaintiff in March, 2019.

48. Defendant PBE never intended to pay Plaintiff Invictus in accordance with the terms of the Contract Documents, International Sales subject matter expertise (i.e. COL (Ret.) Al Rumphrey) Addendum and the Anwar Addendum.

49. Unbeknownst to Plaintiff Invictus, its contractual relationship with Defendant PBE was all a scheme whereby Plaintiff Invictus would impart and educate Defendant PBE in its expertise, knowledge, strategies, contacts and business development skills to Defendant PBE, so that Defendant PBE could eventually terminate the services of Plaintiff Invictus for its own financial gain.

50. To date Defendant has failed to pay Plaintiff Invictus as agreed.

51. To date and pursuant to the Contract Documents, and Defendant PBE's numerous oral promises, the Plaintiff Invictus is owed retainer payments, expenses, and commissions in the amount of Five Hundred Seventy-One Thousand One Hundred Seventy-Six Dollars and Nineteen Cents ($571,176.19).

## COUNT I:
## BREACH OF CONTRACT

52. Plaintiff hereby incorporates and adopt by reference the allegations set forth in paragraphs 1 through 51 above as if set forth fully herein.

53. Plaintiff Invictus and Defendant PBE entered into the Contract Documents, Plaintiff Invictus contracted to perform Huntsville sales development as an authorized representative of Defendant PBE and to assist PBE in obtaining contracts for PBE products and services, including US Army Aviation aircraft (i.e. Blackhawk and Chinook helicopters) for a

monthly retainer in the amount of Four Thousand Dollars ($4,000.00) and commissions at the rate of one percent (1%) for sales up to and including Ten Million Dollars ($10,000,000.00) and commissions at the rate of two percent (2%) once sales exceeded Ten Million Dollars ($10,000,000.00) annually.

54. In accordance with the Contract Documents, Plaintiff Invictus performed its duties pursuant to the Contract Documents generating significant sales for Defendant PBE.

55. While the Defendant PBE instructed Plaintiff Invictus to reduce its commissions to one-half percent (1/2%), Defendant PBE continued to promise Plaintiff Invictus that the Plaintiff eventually would be paid in accordance with the Contract Documents.

56. Plaintiff Invictus relied upon the express language of the Contract Documents and the oral promises of Defendant PBE, and it continued to perform work on behalf of Defendant PBE as instructed.

57. To date, Defendant PBE has failed to pay Plaintiff Invictus in accordance with its written agreements and in accordance with its oral promises.

58. Defendant PBE's failure to pay Plaintiff Invictus in accordance with the Contract Documents constitutes a material breach of its agreement with the Plaintiff.

59. As a proximate result of Defendant PBE's breach of contract, the Plaintiff Invictus has suffered injury and damages.

WHEREFORE, Plaintiff Invictus demands judgment against Defendant PBE in amount exceeding seventy-five thousand dollars ($75,000.00), plus reasonable attorneys' fees, interest, costs and any other relief deemed appropriate by this Court.

## COUNT II:
## UNJUST ENRICHMENT

60. Plaintiff hereby incorporates and adopts by reference the allegations set forth in paragraphs 1 through 59 above as if set forth fully herein.

61. In reliance on Defendant PBE's promise that it would pay the Plaintiff Invictus its commissions in accordance with the rates set forth in the Contract Documents, Plaintiff Invictus continued to perform work on behalf of Defendant PBE – on an expanded scope – in order to generate significant sales for Defendant PBE.

62. In continuing to work to generate sales for Defendant PBE, Plaintiff Invictus conferred a benefit upon Defendant PBE.

62. Defendant PBE was, by Plaintiff Invictus' work in generating significant sales for Defendant PBE, and through its promises that it would compensate the Plaintiff Invictus, was aware of and had knowledge of the financial benefit conferred upon it by Plaintiff Invictus.

63. Defendant PBE's acceptance and retention of the sales Plaintiff Invictus generated for Defendant PBE, while retaining the commissions it promised to the Plaintiff Invictus, makes inequitable for Defendant PBE to retain the commissions owed to the Plaintiff Invictus.

64. Defendant PBE was unjustly enriched when it retained the commissions it promised to pay the Plaintiff Invictus as a result of the significant sales generated for Defendant PBE by the Plaintiff Invictus.

WHEREFORE, Plaintiff Invictus demands judgment against Defendant PBE in amount exceeding seventy-five thousand dollars ($75,000.00), plus reasonable attorneys' fees, interest, costs and any other relief deemed appropriate by this Court.

## COUNT III:
## QUANTUM MERUIT

65. Plaintiff hereby incorporates and adopts by reference the allegations set forth in paragraphs 1 through 64 above as if set forth fully herein.

66. Plaintiff Invictus and Defendant PBE entered into the Contract Documents whereby, Plaintiff Invictus contracted to perform Huntsville sales development as an authorized representative of Defendant PBE and to assist PBE in obtaining contracts for PBE products and services, including US Army Aviation aircraft (i.e. Blackhawk and Chinook helicopters) for a monthly retainer in the amount of Four Thousand Dollars ($4,000.00) and commissions at the rate of one percent (1%) for sales up to and including Ten Million Dollars ($10,000,000.00) and commissions at the rate of two percent (2%) once sales exceeded Ten Million Dollars ($10,000,000.00) annually.

67. The Plaintiff Invictus diligently performed work, including expanding its scope of work, to generate sales for Defendant PBE.

68. The Plantiff Invictus rendered valuable services to Defendant PBE with the intention of receiving commissions for the sales it generated. Defendant PBE accepted the services and work provided by the Plaintiff Invictus, received the benefit of Plaintiff Invictus' work, and knew that Plaintiff Invictus expected to be paid for such work.

69. All work performed on behalf of Defendant PBE by Plaintiff Invictus was rendered under such circumstances that Defendant PBE knew that Plaintiff Invictus expected to be paid. On many occasions, the Plaintiff Invictus advised Defendant PBE that it expected to be paid for its work, and Defendant PBE did, in fact, promised the Plaintiff Invictus would be paid.

WHEREFORE, Plaintiff Invictus demands judgment against Defendant PBE in amount exceeding seventy-five thousand dollars ($75,000.00), plus reasonable attorneys' fees, interest, costs and any other relief deemed appropriate by this Court.

## COUNT IV:
## PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

70. Plaintiff hereby incorporates and adopts by reference the allegations set forth in paragraphs 1 through 70 above as if set forth fully herein.

71. Plaintiff Invictus and Defendant PBE entered into the Contract Documents whereby, Plaintiff Invictus contracted to perform Huntsville sales development as an authorized representative of Defendant PBE and to assist PBE in obtaining contracts for PBE products and services, including US Army Aviation aircraft (i.e. Blackhawk and Chinook helicopters) for a monthly retainer in the amount of Four Thousand Dollars ($4,000.00) and commissions at the rate of one percent (1%) for sales up to and including Ten Million Dollars ($10,000,000.00) and commissions at the rate of two percent (2%) once sales exceeded Ten Million Dollars ($10,000,000.00) annually.

72. Thereafter, on several occasions, Defendant PBE instructed Plaintiff Invictus to reduce its invoice for commissions to one-half percent (1/2%) with the promise that Defendant PBE would pay the balance due and owing at a later date.

73. In reliance on Defendant PBE's promise that it would be paid, the Plaintiff Invictus expanded its scope of work under the parties' Contract Documents and continued to generate sales for Defendant PBE.

74. Plantiff Invictus continued to work for nearly two (2) years at the request of Defendant PBE because at all times relevant hereto, Defendant PBE promised that Plaintiff Invictus would be paid at the commission rates established in the Contract Documents.

75. Defendant PBE wrongfully has refused to pay the Plaintiff Invictus its' rightfully earned commissions, and injustice will result of the Defendant PBE's promise to pay.

WHEREFORE, Plaintiff Invictus demands judgment against Defendant PBE in amount exceeding seventy-five thousand dollars ($75,000.00), plus reasonable attorneys' fees, interest, costs and any other relief deemed appropriate by this Court.

## COUNT V: <br> INTENTIONAL MISREPRESENTATION - FRAUD

76. Plaintiff hereby incorporates and adopts by reference the allegations set forth in paragraphs 1 through 70 above as if set forth fully herein.

77. Defendant PBE, a corporation engaged in Florida, sought to expand its business in Huntsville, Alabama.

78. Knowing that it could not expand its business without the help of a person or entity connected in Huntsville and experienced in government and military sales in the Middle East, Africa, Asia, South America, and Europe.

79. Defendant PBE solicited Nate Hoffman on behalf of Invictus to assist Defendant PBE in managing its business development in Huntsville, Alabama.

80. Thereafter, Defendant PBE and Plaintiff Invictus formed an agreement and entered into the Contract Documents.

81. The Contract Documents provided that Plaintiff Invictus was to perform Huntsville sales development as an authorized representative of Defendant PBE and to assist PBE in obtaining contracts for PBE products and services, including US Army Aviation aircraft (i.e. Blackhawk and Chinook helicopters) for a monthly retainer in the amount of Four Thousand Dollars ($4,000.00) and commissions at the rate of one percent (1%) for sales up to and including Ten Million Dollars ($10,000,000.00) and commissions at the rate of two percent (2%) once sales exceeded Ten Million Dollars ($10,000,000.00) annually.

82. However, unbeknownst to Plaintiff Invictus, Defendant PBE never intended to pay Plaintiff Invictus as agreed.

83. Instead, Defendant PBE instructed Plaintiff Invictus to invoice its commissions at a reduced rate, all while falsely stating that Plaintiff Invictus would be paid in accordance with the Contract Documents.

84. Defendant PBE knew its representations to the Plaintiff Invictus that the Plaintiff Invictus would be paid commissions at the agreed rate in the Contract Documents were false when the represntations were made. Defendant PBE was desirious of inducing Plaintiff Invictus to enter into the Contract Documents and establish operations in Huntsville, Alabama so that Defendant PBE could acquire the knowledge, expertise, sales tactics, and other business practices of Plaintiff Invictus for its own business development purposes.

85. Defendant PBE never had any intention of paying the Plaintiff Invictus as promised.

86. Defendant PBE's representations were made for the purpose of defrauding the Plaintiff Invictus.

87. The representations made by Defendant PBE in the Contract Documents and orally – that the Plaintiff Invictus would be paid commissions at the rate established in the Contract Documents – and that all commission payments would be made despite instructing the Plaintiff Invictus to reduce its invoices – were made with the intention of having Plaintiff Invictus act and rely on them.

88. Plaintiff Invictus' generation of significant sales for Defendant PBE was accomplished in reliance upon Defendant PBE's written and oral statements, and Plaintiff Invictus was justified in its reliance based upon thet many conversations it had with the representatives of Defendant PBE.

WHEREFORE, Plaintiff Invictus demands judgment against Defendant PBE in compensatory damags amount exceeding seventy-five thousand dollars ($75,000.00), punitive damages in an amount to be determined, plus reasonable attorneys' fees, interest, costs and any other relief deemed appropriate by this Court.

                                                               /s/
Brandy A. Peeples, Esquire
Fed. Bar No. 27147
Brandy A. Peeples, P.C. t/a Peeples Law
47 East All Saints Street
Frederick, Maryland 21701
410-327-9614 (telephone)
866-277-7137 (facsimile)
brandy@peeples-law.com

*Counsel for Plaintiff*